*Decision will be entered under Rule 50.*

CHESAPEAKE & VIRGINIAN COAL CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11319. Promulgated September 12, 1928.

*David A. Buckley, Jr., Esq., Alfred C. Frodel, Esq.*, and *Dean H. Stanley, Esq.*, for the petitioner.
*J. Arthur Adams, Esq.*, for the respondent.

## OPINION.

MURDOCK: Section 200 of the Revenue Act of 1918 defines a personal service corporation as one "whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor * * *."

The respondent concedes that stockholders owning 48.8 per cent of the stock were themselves regularly engaged in the active conduct of the affairs of the corporation. The petitioner attempts to show that in addition to these stockholders others, whose stockholdings increase the total stockholdings to 94.8 per cent, were also regularly engaged in the active conduct of the affairs of the corporation. The contention that certain of these stockholders were so engaged is not without merit, but in regard to others as, for example, Adams, Halsey, Winfree, J. J. Morrison, W. H. Ruby, King, and Hancock, we can not find from the record that they were themselves regularly engaged in the active conduct of the affairs of the corporation.

To entitle the petitioner to personal service classification, not only must the principal stockholders be regularly engaged in the active conduct of the affairs of the corporation, but also it must appear that the income of the corporation is to be ascribed primarily to the activities of such principal owners so engaged. In other words, the classification is not supported by proof that the activities of certain stockholders are primarily responsible for the income, unless it also appears

that those same stockholders are themselves regularly engaged in the active conduct of the affairs of the corporation. Thus it is not convincing to have the petitioner argue that its income is primarily due to the activities or influence of certain stockholders among whom are some who, in our opinion, are not regularly engaged in the active conduct of the petitioner's business. The combination of circumstances required by the Act is not present.

The petitioner during the first three months of 1918 was a selling agent for certain mines having coal to sell. During the remaining nine months of 1918 it was a purchasing agent for certain persons and corporations desiring to purchase coal. But at all times during the year 1918 it earned its commissions by bringing together two persons, one desiring to sell and the other desiring to purchase coal. In order to do this the petitioner had to find some one with coal for sale who would allow that coal to be sold through the petitioner, and also some one desirous of purchasing coal who would permit the purchase to be made through the petitioner. We can not determine that one of these functions was any more important or was any more the source of income than the other. The petitioner attempts to show that, through the activities or influence of its principal stockholders, coal-mining companies were induced to sell their product through the petitioner, and claims that its income is to be ascribed primarily to these activities. It has made no effort to show that these same or other stockholders were active in the succeeding, but equally important step—finding purchasers for this coal. In fact, it has made no effort to show who was responsible for the sale of the coal, but asks us to take judicial notice that coal was easily sold during 1918, the difficulty being to get the coal to sell. We have no knowledge of conditions in the coal business. If such a condition existed that fact should have been proven.

The petitioner was no doubt fortunate in having a large portion of its stock held by people closely associated with coal-mining operations. Yet we can not find from the evidence the portion of the coal sold through it which was sold through it because of the activities of the stockholders. So far as we know 85 per cent or more of the coal which was sold through the petitioner during the year 1918 might have come from the mines of coal companies with which the stockholders of the petitioner had nothing whatever to do and might have been sold through the petitioner for reasons that we know nothing about. We can not determine to what the income of the petitioner for the year 1918 is to be primarily ascribed. The salesmanship or purchasing ability of nonstockholders might have been the important thing, or a favorable location, or any one of a number of different things.

The petitioner relies upon the case of *New Orleans Shipwright Co., Ltd.* v. *Commissioner*, 27 Fed. (2d) 214, reversing a decision of this Board. In our opinion that case is not authority for the various contentions of the petitioner in the present case. The facts in the two cases are quite different. The New Orleans Shipwright Co., Ltd. did practically no work for any steamship company save for those steamship companies for whom its stockholders were New Orleans agents. The court apparently considered this an important fact, necessary for its holding that the stockholders in that case were responsible for the income. As heretofore pointed out, in the present case we do not know what proportion of the total coal sold through the petitioner during the taxable year came from mines in which the petitioner's stockholders were interested or over which they exercised any influence and what proportion came from mines in which the petitioner's stockholders were not interested and over which they exercised no influence. The contention of the respondent that the petitioner is not entitled to classification as a personal service corporation is therefore sustained. We need not discuss the question of whether or not capital was an income-producing factor.

> *Further proceedings will be had under Rule 62 (b).*